IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:11-CV-3-D

| | |
|---|---|
| THERESA MCCLEARN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits on the grounds that she is not disabled. The case is before the court on plaintiff's and the Commissioner's respective motions for judgment on the pleadings (D.E. 23, 27). Both parties filed memoranda in support of their respective motions. (D.E. 24, 28). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 29). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

### I. BACKGROUND

**A.   Case History**

Plaintiff filed an application for SSI benefits on 11 June 2007 alleging the onset of disability on 1 March 2007. Transcript of Proceedings ("Tr.") 14. The application was denied initially (Tr. 75) and upon reconsideration (Tr. 83-87), and a request for hearing was timely filed (Tr. 88-89). On 11 September 2009, a hearing was held before an Administrative Law Judge

("ALJ"). Tr. 24-54. The ALJ issued a decision denying plaintiff's claim on 25 September 2009. Tr. 14-20. Plaintiff timely requested review by the Appeals Council. Tr. 9-10. The Appeals Council denied the request for review on 28 June 2010. Tr. 4-8. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 5 January 2011, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1), Order Allowing Mot. (D.E. 3), Compl. (D.E. 4)).

B. **Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 47 years old on the alleged onset date of disability and 50 years old on the date of the hearing. Tr. 19 ¶ 6, 28. She did not complete high school. Tr. 19 ¶ 7 (finding plaintiff to have a limited education), 28 (plaintiff's testimony that she completed tenth grade);

*see* 20 C.F.R. § 416.964(b)(3) (defining limited education generally as the seventh through eleventh grade level of formal education).

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 16 ¶ 1. At step two, the ALJ found that plaintiff had one medically determinable impairment that was severe within the meaning of the Regulations, 20 C.F.R. § 416.920(c): degenerative disc disease. Tr. 16 ¶ 2. At step three, however, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals one of the listings. Tr. 17 ¶ 3.

The ALJ determined that plaintiff has the RFC to perform the full range of medium work. Tr. 17 ¶ 4. Specifically, she found plaintiff able to lift and carry 50 pounds occasionally and 25 pounds frequently, and to sit, stand, and/or walk for 6 hours in an 8-hour workday, all with no postural, manipulative, visual, communicative, or environmental limitations. *Id.*; *see* 20 C.F.R. § 416.927(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). At step four, the ALJ found that plaintiff had no past relevant work. Tr. 19 ¶ 5. At step five, the ALJ determined on the basis of plaintiff's RFC, age, education, and work experience that a finding of "not disabled" was directed by Medical-Vocational Rule 203.25.[1] Tr. ¶ 9. She also accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant

---

[1] The Medical-Vocational Guidelines or grids are a set of rules that direct a conclusion as to whether or not a claimant is disabled. *See generally* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200(a). They are grouped by RFC for sedentary, light, and medium work, respectively. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (*e.g.*, none, unskilled, semiskilled, skilled, transferability of skills). The grids presume a claimant whose impairments prevent him from doing past relevant work or who has no past relevant work

An ALJ may not rely exclusively on the grids where a nonexertional condition or impairment "affects [a claimant's] residual functional capacity to perform the work of which he is exertionally capable." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *see also* 20 C.F.R. § 416.969a(d). A nonexertional limitation is one which affects a claimant's ability to meet the demands of jobs other than strength demands and can include difficulty functioning due to nervousness, anxiety, or depression or difficulty tolerating environmental factors such as dust or fumes. *See* 20 C.F.R. § 416.970(c)(1)(i), (v).

numbers that plaintiff could perform, including day worker, dining room attendant, and laundry laborer. *Id.* The ALJ accordingly concluded that plaintiff was not disabled. Tr. 20 ¶ 10.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales,* 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

B. **Overview of Plaintiff's Contentions**

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ erred by: (1) improperly assessing plaintiff's credibility; (2) failing to give the opinions of a treating physician of hers appropriate weight; (3) determining that plaintiff has an RFC for the full range of medium work; and (4) providing the vocational expert an improper hypothetical. The court addresses each of these grounds in turn below.

C. **Credibility Analysis**

Plaintiff argues that the ALJ failed to adhere to the requisite procedure in evaluating plaintiff's credibility and to adequately credit her allegations, particularly those relating to pain. The court disagrees.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id*. at 594-95. Contrary to plaintiff's contention, satisfaction of step one in the analysis does not, under Fourth Circuit precedent, entitle a claimant's allegations to great weight. *Smith v. Astrue*, No. 11-1574, 2011 WL 6188731, at *2 (4th Cir. 14 Dec. 2011)

("*Craig* does not create or recognize a great weight rule affording the claimant a presumption of credibility at step two of the pain analysis based on a successful showing at step one.")[2]; *see also Felton-Miller v. Astrue*, No. 11-1500, 2011 WL 6396463, at *1-2 (4th Cir. 21 Dec. 2011) (rejecting plaintiff's argument that a finding at the step one analysis of *Craig* affords any presumption of credibility and requires application of a great weight rule).

Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig*, 76 F.3d at 595. The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)); *see also* 20 C.F.R. § 416.929 (setting out factors in evaluation of a claimant's pain and other symptoms).

Here, plaintiff testified that she has chronic cervical pain that goes down her spine and, five times a week, down her arms to her hands. Tr. 17 ¶ 4; 33, 36. She said that her ability to walk was limited because of pain in the bottom of her feet and swelling in her feet, for which she has been advised to elevate them. Tr. 17 ¶ 4; 40-42. She complained of symptoms from irritable bowel syndrome. Tr. 39. She further testified that she suffers from severe headaches, which she treats by taking aspirin or ibuprofen and lying down with an ice pack on her head. Tr. 17 ¶ 4; 42-43. She also testified that she has stabbing pain from her chest to her back from angina for which she has been prescribed NitroQuick. Tr. 17 ¶ 4; 43-44. Plaintiff cares for her disabled husband and performs household chores, including paying bills, cooking, grocery shopping, and doing laundry. Tr. 18 ¶ 4; 37, 45, 47-48. The ALJ presented a summary of plaintiff's testimony in her decision. Tr. 17 ¶ 4; 18 ¶ 4.

---

[2] In *Smith*, the Fourth Circuit noted that subjective evidence is entitled to great weight only when it is either uncontradicted or supported by substantial evidence. *Smith*, 2011 WL 6188731, at *8 (citing *Combs v. Weinberger*, 501 F.2d 1361, 1362-63 (4th Cir. 1974)).

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 19 ¶ 4. At the second step of the credibility assessment, the ALJ found that plaintiff's testimony was not fully credible. She stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." Tr. 19 ¶ 4.

The ALJ provided specific reasons for her credibility determination that are supported by substantial evidence of record. Tr. 17-19 ¶ 4. She explained, first, that the limitations of which plaintiff complains are not consistent with the objective evidence. Tr. 18 ¶ 4. Among other evidence, she pointed to a 29 August 2007 cervical MRI that was normal (Tr. 168, 175); a 21 November 2008 lumbar spine MRI showed some (*i.e.*, "mild") disc bulging (Tr. 224);[3] and a 31 July 2007 consultative examination (by Satish K. Kumar, M.D.) that revealed no edema or cyanosis in her extremities, no restricted movements of any joints, and full sensation and reflexes (Tr. 155-58). Tr. 17-18 ¶ 4. She also stated that the treatment notes of plaintiff's providers do not reflect her complaints of neurological symptoms in her arms, the severe headaches, or the pain and swelling of her feet. Tr. 18 ¶ 4; *see also* Tr., *e.g.*, 200-07 (physician treatment notes).

The ALJ further explained that the level of care plaintiff received was inconsistent with the limitations plaintiff claimed. Tr. 18 ¶ 4. She pointed out that for the most part plaintiff has been advised to take just Tylenol and ibuprofen (*e.g.*, Motrin) for her complaints of pain,

---

[3] Although the MRI was taken in November 2008, the physician's note addressing it is dated 7 January 2009 (Tr. 206). The ALJ therefore refers to the MRI by stating, "In January 2009, a lumbar MRI reportedly showed some disc bulging." Tr. 17 ¶ 4.

although more recently the drug Ultram had been prescribed.[4]  Tr. ¶ 17 ¶ 4; *see also* Tr., *e.g.*, 200.

The ALJ also found that the credible opinion evidence did not support plaintiff's complaints.  In this portion of her analysis, the ALJ discounted a 9 September 2009 medical source statement (Tr. 209-14) from a treating physician of hers, John R. Pickett, D.O.  She explained that she gave greater weight to the two consultative physical RFC assessments of plaintiff, which found her capable of medium work with no postural, manipulative, visual, communicative, or environmental limitations.  Tr. 18 ¶ 4; *see also* Tr. 159-66 (physical RFC assess. dated 7 Aug. 2007), 187-94 (physical RFC assess. dated 11 Oct. 2007).  As discussed in detail below, the ALJ's evaluation of the opinion evidence was lawful.

Lastly, the ALJ found that plaintiff's daily activities are inconsistent with her claimed limitations.  Tr. ¶ 4; 47-48.  As indicated, these include taking care of her husband and performing a wide range of household chores.  Tr. 18 ¶ 4.

Moreover, it is apparent that the ALJ did give some weight to plaintiff's complaints.  The ALJ found expressly that plaintiff's degenerative disc disease is a severe impairment and that she is restricted to work at the medium exertional level, rather than work at a higher exertional level. Tr. 17 ¶ 4.

Plaintiff challenges the ALJ's credibility analysis, in part, on the grounds that the ALJ failed to make the required finding at step one.  As pointed out above, however, the ALJ did make such a finding and there is utterly no basis for plaintiff's contention.  Plaintiff's further contention that the ALJ used boilerplate conclusory language to explain the weight given to plaintiff's statements is also belied by a review of the ALJ's decision.

---

[4] See footnote 6 below and related text for more detailed information relating to plaintiff's medications.

Plaintiff further contends that by finding plaintiff's complaints not credible to the extent inconsistent with plaintiff's RFC, the ALJ improperly determined her RFC before evaluating her credibility. The court disagrees. The ALJ's reference to plaintiff's RFC was simply a shorthand way of indicating the extent of limitations the ALJ found plaintiff to have. The ALJ's decision makes clear that she followed the required two-step process in making her credibility determination.

The court concludes that the ALJ's credibility determination is based on the proper legal standards and supported by substantial evidence. Plaintiff's challenge to it is accordingly without merit.

### D.     Assessment of Opinions of Plaintiff's Treating Physician

Dr. Pickett served as plaintiff's treating physician from 23 July 2008 to 1 September 2009, seeing her on eight occasions during this period.[5] *See* Tr. 200-08. In a medical source statement dated 9 September 2009 (Tr. 209-14), Dr. Pickett found plaintiff to be limited in numerous respects. He opined, for example, that plaintiff was able to sit for at most 2 hours before alternating postures by walking for 15 minutes (Tr. 210), subject to a maximum sitting time of 6 hours in an 8-hour workday (Tr. 211); stand or walk for at most 15 minutes at a time with a need to sit down for an hour before returning to standing or walking, subject to a maximum standing and walking time of 4 hours in an 8-hour workday (*id.*); and lift up to 10 pounds occasionally but never more than 10 pounds (Tr. 212). But he determined that she could never stoop (*id.*) and seldom engage in repetitive use of her hands (Tr. 213). He also found that she required a total rest time of an hour in an 8-hour workday (Tr. 212) and could be expected to be absent from work due to her limitations once a month (Tr. 213). In her decision, the ALJ

---

[5] The record documents office visits on 1 July 2008 (Tr. 200-01), 31 July 2008 (Tr. 202), 2 September 2008 (Tr. 203), 15 October 2008 (Tr. 204), 17 November 2008 (Tr. 205), 7 January 2009 (Tr. 206), 9 February 2009 (Tr. 207), and 22 April 2009 (Tr. 208).

found that Dr. Pickett's assessment was "not consistent with the record as a whole and is even inconsistent with Dr. Pickett's own treatment notes." Tr. 18 ¶ 4. Plaintiff contends that the ALJ erred by not giving Dr. Pickett's opinion controlling weight. The court disagrees.

Opinions of physicians who have treated a claimant are generally accorded more weight than the opinions of physicians lacking a treatment relationship. 20 C.F.R. §416.927(d)(2). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* Indeed, the Regulations provide that opinions of treating physicians on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the frequency of examination, the supportability of the opinions, their consistency with the record, and any specialization of the provider. 20 C.F.R. § 416.927(d)(2)-(6). Significantly, an ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 416.927(f)(2)(ii).

Similarly, the opinions of physicians who examine a claimant are generally entitled to more weight than those of physicians who did not perform an examination. *See* 20 C.F.R. § 416.927(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (2 July 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 416.927(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. 20 C.F.R. § 416.927(f). Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. 20 C.F.R. § 416.927(f)(2)(ii).

The court finds the ALJ's treatment of Dr. Pickett's opinion to be lawful. As required, she gave specific reasons supported by evidence of record to support her determination to give Dr. Pickett's opinions little weight. She points out, for example, that in his first visit with plaintiff, on 1 July 2008, he started her on an analgesic (*i.e.*, Meloxicam) and muscle relaxer (*i.e.*, Cyclobenzaprine) for her back pain (and pain from a prior shoulder injury), although she rated her pain as only a 3 on a 0 to 10 pain scale. Tr. 18 ¶ 4; 200, 201. The ALJ then indicates that subsequent notes by Dr. Pickett do not reflect a substantial change in plaintiff's medication. Tr. 18 ¶ 4.[6] The ALJ also notes that in the office visit on 2 September 2008 plaintiff reported no new complaints, and Dr. Pickett found that her back pain was slightly improved. Tr. 18 ¶ 4; 203. The ALJ cited to the additional fact that Dr. Pickett never referred plaintiff to an orthopedist,

---

[6] Dr. Pickett changed her medications to the analgesics Ultram ER (*i.e.*, extended release) and Motrin and the muscle relaxant Flexeril in an office visit on 15 October 2008 (Tr. 204), and he appears to have kept them the same after that visit (*see* Tr. 205-08).

12
Case 4:11-cv-00003-D   Document 30   Filed 01/31/12   Page 12 of 18

physical therapist, or pain management specialist. Tr. 18 ¶ 4. The ALJ further pointed out that Dr. Pickett's own treatment notes did not contain information that supported the same limitations outlined in the medical source statement. *Id.* In addition to this evidence expressly discussed by the ALJ, the other evidence underlying her credibility determination also supports her attribution of little weight to Dr. Pickett's opinions, including the consultative examination by Dr. Kumar (Tr. 155-58) and the two consultative physical RFC assessments (Tr. 159-66, 187-94).

Plaintiff argues that the reasons expressed by the ALJ for not crediting Dr. Pickett's opinion were erroneous. She states, for instance, that in finding a lack of substantial change of medications for plaintiff's back pain the ALJ overlooked Dr. Pickett's prescribing Ultram for her. The ALJ did, however, note in her decision that plaintiff had been prescribed Ultram. Tr. 17 ¶ 4. The notion implicit in the ALJ's finding that plaintiff's condition was not determined by Dr. Pickett to require pain relievers stronger than those he prescribed is clearly not erroneous. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *see also Felton-Miller*, No. 11–1500, 2011 WL 6396463, at *2 (4th Cir. 21 Dec. 2011) (holding that court may discredit subjective complaints of pain where substantial evidence supports conclusion that the claimant's symptoms were successfully controlled with medication).

Plaintiff also disputes the finding that she was not prescribed physical therapy and contends that she did receive it. But the physical therapy visits were before plaintiff began seeing Dr. Pickett in 2008 (*see* Tr. 207), and there is no indication in the record that physical therapy was ever discussed by Dr. Pickett.

Similarly, plaintiff disputes the ALJ's statement that Dr. Pickett did not refer her to an orthopedist because he indicated that he planned to do so. *See* Tr. 206. The seemingly

undisputed fact is, though, that Dr. Pickett never did refer her to an orthopedist. Thus, the ALJ's statement to that effect was neither wrong nor misleading.

Plaintiff contends that the ALJ should have recontacted Dr. Pickett for clarification on the issue of referral to an orthopedist. She relies on the regulation requiring that an ALJ obtain additional information when the evidence received from a claimant's treating physician or other medical source is inadequate to enable the ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 416.912(e). Here, the evidence from Dr. Pickett, including specifically his comment regarding referral of plaintiff to an orthopedist, was not inadequate so as to preclude a determination on whether plaintiff is disabled. The ALJ therefore did not err by not recontacting him.

In addition, while conceding that Dr. Pickett's treatment notes do not reflect the limitations found in the medical source statement, plaintiff argues that this manner of record keeping is common practice. She offers no proof of that dubious proposition, although she carries the burden of proving disability. In any event, the ALJ's characterization of Dr. Pickett's treatment notes is supported by the record.

Finally, plaintiff argues that the ALJ erred by giving greater weight to the 11 October 2007 physical RFC assessment of consultative physician William Farley, M.D. (Tr. 187-94) than to Dr. Pickett's opinions. As indicated, Dr. Farley concluded that plaintiff could perform medium work with no postural, manipulative, visual, communicative, or environmental limitations. Tr. 188-91, 194.

Plaintiff bases her contention, in part, on the fact that Dr. Farley did not examine plaintiff, while Dr. Pickett did. But the ALJ was clearly aware of that fact and the regulation and Social Security ruling relating to the evaluation of the opinions of nonexamining sources. Tr. 17

¶ 4 (citing 20 C.F.R. § 416.927 and Soc. Sec. R. 96-6p, 1996 WL 374180 (2 July 1996)); 18 ¶ 4. Moreover, she explained that she gave the physical RFC assessment by Dr. Farley and the other such assessment greater weight because they were "more consistent with the objective findings and the record as a whole." Tr. 18 ¶ 4. Considered in the context of the ALJ's extensive review and discussion of the evidence that precedes and follows this explanation, the court finds it adequate.

Plaintiff also argues that Dr. Farley's assessment does not merit greater weight because it was prepared prior to the 21 November 2008 lumbar spine MRI that showed some disc bulging. But, as noted, the ALJ expressly references this MRI in her decision (Tr. 17 ¶ 4) and can appropriately be deemed to have considered it. *See* Tr. 14 (stating that ALJ considered all the evidence). For this and the other reasons stated, the court rejects plaintiff's challenge to the ALJ's treatment of Dr. Pickett's opinions.

E.     **RFC Determination**

Plaintiff argues that the ALJ's RFC determination is erroneous because it is not sufficiently restrictive in light of the pain she suffers and thereby is not supported by substantial evidence. The court disagrees and finds that substantial evidence supports the RFC determination. This evidence includes that discussed above supporting the ALJ's credibility determination and her determination on Dr. Pickett's opinions. The ALJ's analysis of that evidence, as discussed above, makes clear the grounds upon which she based her RFC determination.[7] The court concludes that the RFC determination was lawful.

---

[7] Consistent with her argument regarding the RFC determination, plaintiff contends that the ALJ should have found pain itself to be a severe impairment at step two of the sequential analysis. It is clear, though, that the ALJ deemed the severe impairment of degenerative disc disease, which she found plaintiff to have at step two, to encompass the associated neck and other pain. *See* Tr., *e.g.*, 19 ¶ 4 ("[C]laimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms . . . ."). In any event, it is questionable whether pain alone can be a severe impairment. *See Gross*, 785 F.2d at 1166 (noting that "pain is not disabling *per se*").

### F. Hypothetical Provided Vocational Expert

Plaintiff contends that the ALJ erred by failing to include all of plaintiff's limitations in the hypothetical she posed to the vocational expert. Plaintiff's contention is without merit.

The most fundamental reason is that the vocational expert's opinion was not necessary. Having found applicable Medical-Vocational Rule 203.25, directing a decision of "not disabled," the ALJ was not required to obtain the opinion of a vocational expert. *Coles v. Astrue*, No. JKD 080321, 2009 WL 3380334, at *4 (D. Md. 16 Oct. 2009) ("Because the ALJ was permitted to rely on the medical-vocational guidelines, she was not required to consult a vocational expert to determine whether jobs exist that [plaintiff] has the capacity to perform.").

On the merits, plaintiff's contention also fails. To be helpful, the vocational expert's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005); *Baker v. Astrue*, No. SAG-10-145, 2012 WL 12751, at *4 (D. Md. 3 Jan. 2012) (rejecting plaintiff's objections to the ALJ's hypothetical to vocational expert where "the hypothetical presented to the VE [vocational expert] was supported by substantial evidence and adequately included all the limitations that were deemed credible by the ALJ"). The vocational expert must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

In this case, the hypothetical presented to the vocational expert by the ALJ adequately reflected the plaintiff's RFC as determined by the ALJ. The hypothetical posited an individual of the same age, education, and work background as plaintiff who had the exertional capacity for a full range of medium work. Tr. 50, 51. Based on this hypothetical, the vocational expert

testified that there were jobs that existed in significant numbers in the national and local economies which an individual with the limitations described could perform. Tr. 50-51.

Plaintiff's contention that the hypothetical did not adequately include all the limitations resulting from plaintiff's pain is meritless. As discussed, the RFC determined by the ALJ is supported by substantial evidence and was determined in accordance with the applicable legal standards. The limitations which plaintiff cites were therefore properly excluded from the hypothetical. *See Johnson*, 434 F.3d at 659.

The court finds the hypothetical is otherwise lawful. The court accordingly rejects plaintiff's challenge to it.

### III. CONCLUSION

For the foregoing reasons, the court finds that the final decision by the Commissioner applied the correct legal standards and is supported by substantial evidence. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court directs, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 30th day of January 2012.

_____
James E. Gates
United States Magistrate Judge